ONE HUNDRED TWO GLENSTONE, INC., a corporation, Plaintiff-Appellant,

v.

BOARD OF ADJUSTMENT OF the CITY OF SPRINGFIELD, Missouri, et al., Defendants-Respondents.

No. 10243.

Missouri Court of Appeals, Springfield District.

Oct. 11, 1978.

Paul L. Bradshaw, Joseph A. Bohrer, Neale, Newman, Bradshaw & Freeman, Springfield, for plaintiff-appellant.

Howard C. Wright, Jr., City Atty., Springfield, for defendants-respondents.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

TITUS, Judge.

Plaintiff applied to the Springfield Board of Adjustment (board) for a "special exception" to permit completion of a "loading dock-covered" which had been partially built onto the south end of plaintiff's shopping center building in violation of the city's zoning ordinance. The board denied the request under a specific finding and conclusion of law that it "may grant a special exception pursuant only to Section 80.790 of the Zoning Ordinance," which is entitled "When special exceptions may be granted." Via certiorari,[1] plaintiff sought review in the circuit court. § 89.110, V.A.M.S. The board's order was affirmed and plaintiff appealed.

---

1. See *State ex rel. Walmar Investment Co. v. Mueller*, 512 S.W.2d 180, 183[2 and 3] (Mo. App.1974) as to the propriety vel non of seeking review via certiorari rather than by filing a petition for review as indicated in Rule 100, V.A.M.R.

Plaintiff's property lies between east-west Glenwood Street to the north and east-west Sunset Street to the south and immediately east of north-south Holland Avenue. A 40 foot by 200 foot building, which houses the stores in the shopping center, runs lengthwise north and south and is situate on the east side of plaintiff's property; the west side of the property is used for vehicular parking. To the east of or behind the shopping center are apartment complexes whose backyards adjoin Sunset Street. A required 38-foot setback line runs east and west across the south side of plaintiff's property and the property on which the apartments are located. This setback, as noted above, is immediately north of Sunset Street.

On June 12, 1973, plaintiff's agent applied to the superintendent of the city's building regulation section for a permit to build a 20′ × 60′ "loading dock-covered" onto and across the south end of its shopping center building. Construction of the dock was authorized after the superintendent was erroneously informed by another city employee that Sunset Street south of the proposed construction had been "demapped," i. e., that Sunset Street was not a dedicated public way. If this had in fact been true, which it was not, the 20-foot-wide dock would have provided a setback line 18 feet north of Sunset Street or eight feet more than required had the street been a nondedicated thoroughfare.

After issuance of the permit, plaintiff commenced construction. There was no evidence that the city had or had not been given notice when actual construction began. Plaintiff's agent said he left this chore to the builder. By August 10, 1973, the loading dock was complete except for the concrete floor and roof decking. On that day city employees became aware of the zoning violation caused by the construction and a "stop work" order was issued. Thereafter, on a form addressed to the board and entitled "Board of Adjustment Special Exception" plaintiff stated: "The

Special Exception is requested under the provisions of Section 80.310(c)(2) of the Zoning Ordinance and the applicant requests the special exception in order to: Retain and complete a 20′ × 60′ addition to an existing commercial structure . . . ." At the hearing before the board, plaintiff's counsel repeatedly assured the board members that plaintiff was seeking a special exception under § 80.790 of the zoning ordinance. As previously noted, the board in its order concluded it could only grant a special exception pursuant to said § 80.790.[2]

In § 80.780 of the zoning ordinance, exceptions and variances are distinguished as follows: "A 'special exception' is a permission given by the Board properly authorized by this Ordinance in specific cases for the applicant to use his property in a manner contrary to the provisions of this Ordinance provided such use subserves the general welfare and preserves the community interest. A 'variance' is an authorization by the Board granting relief and doing substantial justice in the use of the applicant's property by a property owner where, owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship."

Generally, the "uses" of property covered by zoning ordinances fall in three categories. First, a "nonconforming use" is a use permitted which was in effect prior to ordinance enactment. Second, a "conditional use", also denominated a "special exception" or "special permit", may be permitted where desirable or essential to public welfare or convenience, will not impair the integrity and character of the zoned district, and is not detrimental to public health, welfare or morals. Third, a "variance" is allowable upon a showing that a strict enforcement of the zoning limitation would cause unnecessary hardship. Hardship is not a prerequisite to the granting of a special exception, whereas a showing that strict enforcement of the ordinance would cause unnecessary hardship is a prerequisite to obtaining a variance and the burden of

---

2. See attached Appendix for copy of (1) § 80.790 of the ordinance, (2) findings of fact and conclusions of law made by the board (Order), and (3) § 80.800 of the zoning ordinance.

so showing is upon the applicant. *Tustin Heights Ass'n v. Board of Supervisors*, 170 Cal.App.2d 619, 339 P.2d 914, 919[1] (1959). In a shorthand fashion, it has been said that the "basic difference between a use which is a special exception and one which requires a variance is that the former is legislatively *permitted* in a zone subject to controls whereas the latter is legislatively *prohibited* but may be allowed for special reasons." *Verona, Inc. v. Mayor and Council of West Caldwell*, 49 N.J. 274, 229 A.2d 651, 655[1] (1967). See also, "Special Exceptions Distinguished from Variances," 3 Rathkopf, The Law of Zoning and Planning, 4th ed., pp. 54–3 to 54–5; 82 Am.Jur.2d, Zoning and Planning, § 255, at p. 790 and § 281, at p. 827. It is apparent from § 80.780, supra, and §§ 80.790 and 80.800, see Appendix, that a special exception and a variance are dissimilar, are not one and the same and that the provisions for each are not to be construed together as reciprocal parts of an integrated ordinance. 8 McQuillin, Municipal Corporations, 3rd ed. Rev., § 25.160, pp. 475–483.

To refine the subject further, especially as it relates to the instant case, it seems apparent that what plaintiff actually desired but erroneously did not request was a variance or, more particularly, an "area variance." The latter term is defined as not involving a prohibited use and having no relation to a change of use. "Rather, [it] involve[s] such matters as setback lines [or in] other words, the term 'area' variance is a shorthand description of a variance from structural or lot-area restrictions." 82 Am. Jur.2d, Zoning and Planning, § 256, pp. 792–793.

In short, what plaintiff actually needed was a variance. However, it erroneously and repeatedly assured the board that it sought only a special exception to which, in our opinion, it was not entitled. Therefore, as there was no application before the board for or a hearing held on a variance, we cannot say that the board or the circuit court erred in not granting, sua sponte, a variance or in denying the specific and limited request for a special exception.

*Waeckerle v. Board of Zoning Adjustment*, 525 S.W.2d 351, 358[2] (Mo.App.1975).

Plaintiff's concluding point relied on consists of an asseveration that the board and the City of Springfield should have been estopped from invalidating the permit erroneously issued by city officials because "the building permit was honestly obtained and any violation of the city's ordinance resulted from reliance upon the officials of the city charged with the issuance of such permit." The answer to this point is found in *State ex rel. Walmar Investment Co. v. Mueller*, supra, 512 S.W.2d at 184[4, 5]. "In cases such as the instant one, involving a governmental body, the doctrine of estoppel is not generally applicable; and if applied, is done so only in exceptional circumstances and with great caution. . . . In fact, in the exercise of governmental functions, the doctrine of equitable estoppel cannot usually be invoked against a municipal or public corporation. . . . Further, it is a well established principle in Missouri that a governmental unit is not estopped by illegal or unauthorized acts of its officers. . . . In this connection, it is recognized that a building permit for construction issued but unauthorized under the ordinance is void and a city is not estopped because its employee issued the license or permit."

In its conclusions of law, the circuit court recognized that plaintiff had limited its request to a special exception and that the board's denial of relief was expressly confined to the specific request made. Curiously enough, however, the court proceeded to conclude that albeit the plaintiff and the board expressly confined themselves to a special exception, the board had also "apparently" considered and denied plaintiff a variance under § 80.800 of the zoning ordinance (see Appendix) or § 89.090, V.A.M.S. We deem such a conclusion as superfluous and of no force or effect. "Neither we nor the circuit court can review a matter unless it was first presented to and passed upon by the Zoning Board and then only if the alleged injured party appeals." *Bourke v. Foster*, 343 S.W.2d 208, 211[4] (Mo.App. 1960). Accord, *State ex rel. Weinhardt v.*

*Ladue Professional Building, Inc.,* 395 S.W.2d 316, 321[6, 7] (Mo.App.1965); *Williams v. International Shoe Co.,* 213 S.W.2d 657, 661–662 (Mo.App.1948).

While we affirm the judgment nisi for the reasons stated, supra, as obiter dictum it might be suggested that as plaintiff did not have two remedies in point of fact, that it misconceived its rights and pursued a supposed remedy to which it was not entitled, it is not enough to prevent it from pursuing a remedy to which it might be entitled if the circumstances and proof so warrant. *Pemberton v. Ladue Realty & Construction Co.,* 359 Mo. 907, 911, 224 S.W.2d 383, 385[3, 4] (1949); *Hollipeter v. Stuyvesant Insurance Company,* 523 S.W.2d 595, 600[6] (Mo.App.1975).

All concur.

## APPENDIX

80.790. *When special exceptions may be granted*: The Board of Adjustment may, after public notice and hearing and subject to the conditions and safeguards herein contained, authorize special exceptions to this Ordinance as follows:

(a) Permit the reconstruction, extension or enlargement of a building occupied as a non-conforming use.

(b) Permit the extension of a non-conforming use in a building upon a lot occupied as a non-conforming use.

(c) Grant in relatively undeveloped sections of the City temporary and conditional permits for not more than two-year periods for any use of land, excluding structures.

(d) Permit the use of property in the "R–1" or "R–2" Districts adjacent to the "R–3", "C" or "M" Districts, even if separated therefrom by an alley or by a street, for parking of passenger cars under such safeguards and conditions of the set-back requirements of the more restricted property, provided no other business use is made of such property, and further provided that such parking area shall not extend a greater distance than 500 feet from the "R–3", "C" or "M" Districts.

(e) Permit the use of property owned by a church for the parking of passenger cars in any district under such safeguards and conditions as are necessary to protect the adjacent property.

(f) Permit in any district such modification of the requirements of this Ordinance as the Board may deem necessary to secure an appropriate development of a lot where adjacent to such lot on two or more sides there are buildings that do not conform to these regulations.

(g) Permit such modification of a yard, lot area or lot width regulation requirements as may be necessary to secure appropriate improvements of a parcel of land where such parcel was separately owned on the date of the passage of this Ordinance, and is not adjacent to another parcel of the same ownership and where such parcel is of such size that it cannot be improved without such modification or of such restricted area that it cannot be appropriately improved without such modification.

(h) Permit the extension of a building existing on the date of the passage of this Ordinance by the construction of additional stories above the height limit herein established, if the original plans provided for such additional stories and such building was actually designed and constructed to carry such additional stories.

\* \* \* \* \* \*

## ORDER OF THE BOARD OF ADJUSTMENT

Case No. E–1071

Comes now the Board of Adjustment after hearing evidence and testimony presented by the applicant on August 13, 1974, and having entered said decision by vote of the Board on August 13, 1974, denying applicant's request for a special exception from provisions of Section 80.310(c)(2) of the Zoning Ordinance and hereby makes its findings of fact and conclusions of law on this 3rd day of December, 1974, and hereby orders that said findings of fact and conclusions of law be served by mail on the parties to the proceeding and the right to ap-

peal the decision of said Board shall be from the date of this order.

The Board of Adjustment finds the following facts:

(1) Applicant has filed a request (a copy of which is attached hereto) in Case No. E–1071 for permission to extend an enclosed structure now under construction and to retain and complete said structure requesting a special exception from Section 80.310(c)(2) of the Zoning Ordinance.

(2) Applicant admits that the proposed structure is located within the required front yard by approximately 20 feet and all those facts contained in applicant's request for a special exception.

(3) All those facts stipulated in a joint stipulation of facts.

(4) That the proposed building does not constitute the reconstruction, extension or enlargement of a building occupied as a non-conforming use.

(5) That the request is not in an undeveloped area of the City of Springfield, being in an area subdivided and being used as a shopping center and said area being immediately adjacent to multi-family dwellings.

(6) That the building is not adjacent to a lot on two or more sides where buildings do not conform to these regulations.

(7) That the land was not separately owned on December 5, 1956, the effective date of the Zoning Ordinance.

(8) That the land is a single tract under one ownership owned by the applicant.

(9) That the land owned by the applicant is of such size that it can be improved without modification of the existing regulations under the Zoning Ordinance.

(10) That the granting of the special exception will cause a structure to be located in front of the existing rear building line as shown by Joint Exhibit No. 2–A, 2–B, and 2–C.

(11) That applicant's property has frontage on Glenwood Street and Sunset Street as shown by Joint Exhibit 5.

(12) That the location of the structure shown on Joint Exhibits No. 2–A through 2–H will interfere with the light and air of that property immediately to the east of applicant's property.

(13) That the structure is a building as defined by the Zoning Ordinance, Section 80.010, because the structure as contemplated has a roof supported by columns or walls.

The Board of Adjustment hereby finds the following conclusions of law:

(1) That the Board may grant a special exception pursuant only to Section 80.790 of the Zoning Ordinance.

(2) That applicant has failed to show that he is entitled to an exception under Section 80.790 of the Zoning Ordinance for the following reasons, to-wit:

a. The proposed building does not constitute the reconstruction, enlargement or extension of a non-conforming use under Sections 80.790(a) and (b) of the Zoning Ordinance.

b. That the area is not a relatively undeveloped section of the City and the applicant is not seeking a temporary or conditional permit for a period of two years and therefore applicant is not entitled to an exception under Section 80.790(c) of the Zoning Ordinance.

c. That the applicant does not seek to use this area for the parking of passenger vehicles nor does applicant propose to use the property for parking of passenger vehicles for a church. Therefore, applicant is not entitled to an exception under Sections 80.790(d) or (e) of the Zoning Ordinance.

d. That the property on two or more sides of applicant's property on which there are buildings do not contain buildings that do not conform to these regulations and therefore applicant is not entitled to the special exception under Section 80.790(f) of the Zoning Ordinance.

e. That the applicant's property was not separately owned on the passage of the Zoning Ordinance which was De-

cember 5, 1956, and applicant's property is adjacent to another parcel of land of the same ownership which is of such size that it can be improved without modification. Therefore, applicant is not entitled to an exception under Section 80.790(g).

f. That intent of provisions of Section 80.310(c) of the Zoning Ordinance will be violated in that the granting of this exception would block light, air, and destroy the aesthetic value of adjoining property as shown by the pictures submitted as joint exhibits.

g. That the special exception requested by applicant should not be granted because the use of the land as requested by applicant does not serve the general welfare and the community interest because such interest is not served by permitting the applicant to build in the required front yard.

h. That applicant has failed to sustain his burden of proof in front of the Board in presenting evidence to show that the applicant is as a matter of law entitled to a special exception as requested.

This order entered by the Board of Adjustment on the 3rd day of December, 1974.

/s/Wm. H. Blanton
Chairman

\*     \*     \*     \*     \*     \*

80.800. *When variances may be permitted*: A variance may be granted an applicant when the Board of Adjustment finds:

(a) That there are special circumstances or conditions applying to the land or buildings for which the variance is sought, which circumstances or conditions are peculiar to such land or building and do not apply generally to lands or buildings in the same zone or neighborhood, and that said circumstances or conditions are such that the strict application of the provisions of this ordinance shall deprive the applicant of the reasonable use of such land or building, and;

(b) That the granting of such variance will not be detrimental to the public welfare or substantially or permanently injurious to the property or improvements in such zones or neighborhoods in which the property is located, and;

(c) That the granting of the variance is necessary for the reasonable use of the land or building and that the variance as granted by the Board is the minimum variance that will accomplish this purpose, and;

(d) That the literal enforcement and strict application of the provisions of this Ordinance will result in an unnecessary hardship inconsistent with the general provisions and intent of this Ordinance and that in granting such variance the spirit of the ordinance will be preserved and substantial justice done.

(e) In addition to considering the character and use of adjoining buildings and those in the vicinity, the Board, in determining the findings shall take into account the number of persons residing or working in such building or upon such land and traffic conditions in the vicinity.